UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
KARON EVANS,

                                          Plaintiff,           Case No.:

-against-

                                                  **VERIFIED**
THE CITY OF NEW YORK; MAYOR OF NEW YORK CITY     **COMPLAINT**
ERIC ADAMS; NYPD POLICE COMMISSIONER KEECHANT
SEWELL; NYPD DEPUTY INSPECTOR BESEMAH ROGERS;
NYPD DETECTIVE MICHAEL WALLACE (Badge # 1834, Tax     **PLAINTIFF DEMANDS**
ID # 955649); NYPD POLICE OFFICER JARED MARTINEZ    **A TRIAL BY JURY**
(Badge # 12294, Tax ID # 959795); NYPD POLICE OFFICER
ERTAN KULUG (Badge # 17266); and NYPD MEMBERS JOHN
and JANE DOE #1-25;

                                         Defendants.
--------------------------------------------------------------------------------X

       Plaintiff, KARON EVANS, by his attorney, S. MASOUD MORTAZAVI, a duly admitted

attorney with KAISHIAN & MORTAZAVI LLC, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

       1.     At the time of the incidents giving rise to this Complaint, Plaintiff Karon Evans

("Plaintiff" or "Mr. Evans") was a teenager living in the Nostrand Houses, a New York City

Housing Authority (NYCHA) development in Sheepshead Bay, Brooklyn.

       2.     The Defendants in this incident have caused significant injury to Mr. Evans through

a campaign of harassment and abuse, which included the NYPD Defendants' wrongful conduct of

forcibly and illegally evicting Mr. Evans from his NYCHA housing, falsely arresting him, and

excessively detaining him in the New York City Police Department's ("NYPD") Police Service

Area (PSA) 1 Precinct.

## PARTIES

3.    At all times mentioned herein, Plaintiff, KARON EVANS, was a resident of Kings County in the City and State of New York.

4.    Mr. Evans currently resides in Baltimore County, Maryland, with his family, including his infant daughter.

5.    At all relevant times mentioned herein, Defendant, City of New York ("Defendant City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the NYPD, and their employees.

6.    Defendant, New York City Mayor ERIC ADAMS ("Defendant Adams"), was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "Chief Executive Officer of the City," NYC Charter Section 3, and had final authority to appoint and/or remove any NYPD employees and agent, including the New York City Police Commissioner. He is sued individually and in his official capacity.

7.    Defendant, NYPD Commissioner KEECHANT SEWELL ("Defendant Sewell"), was at all times relevant to this Complaint the Police Commissioner of the NYPD. As Police Commissioner, Defendant Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom Defendant City is liable. She is sued individually and in her official capacity.

8.    Defendant, NYPD Deputy Inspector Besemah Rogers (Tax ID # 937419) ("Defendant Rogers") was at all times relevant to this Complaint an agent and/or employee of

Defendant City and acting within the scope of her employment as the Commanding Officer of NYPD's PSA 1. As Deputy Inspector and Commanding Officer of PSA 1, Defendant Rogers supervised NYPD members deployed within PSA 1, issued orders, implemented policies and procedures, and was responsible for training and ensuring that NYPD members under her command abided by all applicable rules, laws, and regulations. She is sued individually and in her official capacity.

9.      Defendant NYPD Detective Michael Wallace (Badge # 1834, Tax ID # 955649) ("Defendant Wallace"), and Defendant NYPD Police Officer Jared Martinez (Badge # 12294, Tax ID # 959795) ("Defendant Martinez"), were at all times relevant to this Complaint agents and/or employees of the City of New York as members of the NYPD and were acting within the scope of their employment as agents of the City of New York. Defendants Wallace and Martinez are believed to be assigned, at all times relevant to the instant Complaint, to the NYPD's Field Intelligence Unit and/or Criminal Intelligence Section and were operating as agents and/or employees of the Defendant City within PSA 1.

10.      Defendant, NYPD Police Officer Ertan Kulug (Badge # 17266) ("Defendant Kulug"), was at all times relevant to this Complaint an agent and/or employee of the City of New York as a member of the NYPD and was acting within the scope of his employment as an agent of the City of New York. Defendant Kulug is believed to be assigned, at all times relevant to the instant Complaint, to the NYPD's PSA 1.

11.      The true names and identities of the remaining NYPD Member Defendants John or Jane Doe #1-25 are currently unknown to Plaintiff. They are referred to herein collectively as "NYPD Defendants" or "NYPD Member Does." At all times hereinafter mentioned, these NYPD Defendants were employed by the City of New York as members of the NYPD.

12.     At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

13.     Each and every act and omission by the NYPD Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

14.     The NYPD Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

15.     All Defendants were each and all responsible, both jointly and severally, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

16.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were negligent, reckless, outrageous, malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

17.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

18.     Each individual Defendant is sued in her or his individual and official capacities.

### JURISDICTION AND VENUE

19.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

20.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where Defendants are located and where the actions complained of herein occurred.

21.     Plaintiff timely served his Notice of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

22.     Mr. Evans was examined by the Defendant City of New York pursuant to GML §50-h on December 16, 2022.

23.     At least thirty days have elapsed since service of Plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

24.     This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law.

## STATEMENT OF FACTS

25.     At the time of the events giving rise to this Complaint, Plaintiff Karon Evans was a 19-year-old resident of Kings County, New York.

**May 6, 2022, Search:**

26.     On or about May 6, 2022, Defendant NYPD Does #1-5 conducted a no-knock entry and search at Mr. Evans' residence, 2231 Batchelder St, Apartment 6C. This apartment is located in the Nostrand Houses NYCHA Development in Sheepshead Bay, Kings County.

27.     Mr. Evans was not present while the NYPD Does #1-5 executed the search. It is currently unknown whether Defendants Wallace and/or Defendant Martinez and/or Defendant Kulug were present during this search.

28.     During this search, NYPD Member Does broke the door to the apartment and caused significant damage to the dwelling and property inside, including by breaking the leg of a

kitchen table, breaking the drawers of a bedroom dresser, and throwing valuables and belongings onto the floor.

29.     Approximately two days later, on or about May 8, 2022, individual(s) wearing what appeared to be NYPD-issued clothing and hereinafter referred to as NYPD Does #6-7 installed a padlock on the door to Mr. Evans' home while he was not present.

30.     Neither Mr. Evans nor any other resident were provided keys to open the padlock. As a result of Defendants' conduct, Mr. Evans was barred from entering his home without cause, justification, or due process.

31.     A representative from NYCHA informed Mr. Evans and his mother that NYCHA had neither installed nor directed the installation of the padlock and did not have the keys to unlock the door to the unit.

32.     Defendants' conduct caused Mr. Evans to be homeless, and he was forced to stay with friends and family beginning May 8, 2022.

33.     As a result of Defendants' conduct, Mr. Evans felt constant fear, anxiety, and discomfort. This conduct forced Mr. Evans to pursue permanent relocation to Baltimore, Maryland, to live near family members.

34.     Defendants' conduct caused Mr. Evans to experience fear, anxiety, economic loss, homelessness, post-traumatic stress, and other emotional, physical, and psychological damages.

**June 24, 2022, Arrest:**

35.     At approximately 3:00 PM on June 24, 2022, Mr. Evans was with friends in the courtyard of the Nostrand Houses in Kings County when he was approached by multiple uniformed NYPD members believed to include Defendant Kulug, Defendant Wallace, Defendant Martinez, and NYPD Does #8-10.

36. At least one NYPD Defendant identified Mr. Evans by his legal name and informed him that he was under arrest.

37. None of the NYPD Defendants doubted Mr. Evans' identity during this arrest or at any other time, nor did they have cause to do so.

38. In fact, NYPD Defendants, including the individually named NYPD Defendants, approached Mr. Evans directly because they knew his identity.

39. Mr. Evans complied with all orders issued by Defendants, confirmed his true identity, and requested an attorney.

40. Mr. Evans requested to know why he was placed under arrest and was informed by Defendant Kulug only that he was the subject of "an open complaint." There was no warrant for his arrest. Mr. Evans was not informed of any charges against him.

41. Defendants, believed to include Defendant Kulug and Defendant Martinez, placed overly tight metal handcuffs on Mr. Evans' wrists, causing pain and swelling. These Defendants then transported Mr. Evans in a black, unmarked NYPD van to the NYPD PSA 1, located at 2860 W 23rd Street in Kings County.

42. Mr. Evans requested his attorney and stated that he wished to remain silent.

43. Mr. Evans' attorney also repeatedly invoked his rights on his behalf and asserted his legal representation, including by phone, by email, and in person, to Defendant Does #11-15 and Defendant Kulug, Defendant Wallace, and Defendant Martinez, during the approximately eleven (11) hours while Mr. Evans was in Defendants' custody.

44. However, Mr. Evans was repeatedly escorted between holding cells in PSA 1 and a dedicated interrogation room within PSA 1 by Defendant Wallace and Defendant Martinez, where he was repeatedly questioned over Mr. Evans' and his attorney's objection.

45.     These interrogations were conducted primarily by Defendant Wallace and Defendant Martinez.

46.     Over the course of many hours, between approximately 4:00 PM on June 24, 2022, and 12:30 AM on June 25, 2022, Defendant Wallace and Defendant Martinez utilized illegal and coercive tactics in an attempt to induce Mr. Evans into waiving his rights.

47.     Defendants interrogated Mr. Evans about the conduct and identities of others, including individuals they believed to be friends and/or associates of Mr. Evans. Defendants repeatedly attempted to coerce Mr. Evans into incriminating himself and other individuals in various criminal acts.

48.     During one such interrogation session, several hours after his arrest and after Mr. Evans again reiterated to Defendant Wallace and Defendant Martinez that he did not wish to speak with them, Defendant Martinez held a plastic bag in front of Mr. Evans. The bag contained a key.

49.     Defendant Wallace and Defendant Martinez told Mr. Evans that the key inside the bag was the key to his home.

50.     Defendant Wallace and Defendant Martinez informed Mr. Evans, who had been unable to enter his home for approximately a month and a half, that he could have the key and return to his home if, in sum and substance, he gave them information they wanted to hear.

51.     Defendant Wallace and Defendant Martinez confirmed that NYPD members had evicted Mr. Evans from his home under the guise of repairing the door to the apartment unit.

52.     Defendant NYPD Deputy Inspector Besemah Rogers was present in the PSA 1 precinct during Mr. Evans' detention and was aware of the impermissible conduct of NYPD Defendant Wallace, Defendant Martinez, and NYPD Does. However, Defendant Rogers not only failed to intervene in this conduct or discipline her subordinates, but she condoned such conduct

by NYPD Defendants, including Defendant Wallace and Defendant Martinez, by referring to it to Mr. Evans' attorney as, in sum and substance, "nothing nefarious," and "standard procedure."

53.     NYPD Member Does #11-15 were also present in the PSA 1 precinct on June 24, 2022, but did not intervene in the unlawful conduct of their fellow NYPD members.

54.     At approximately 11:30 PM on June 24, 2022, Defendant Martinez informed Mr. Evans' attorney that the conduct of NYPD Defendants, including interrogating Mr. Evans over his clearly stated intent to remain silent, amounted to a "standard detective debriefing."

55.     At approximately 12:00 AM on June 25, 2022, Defendant Wallace informed Mr. Evans' attorney that Mr. Evans was to be charged with one count of <u>NYC Admin. Code § 10-131(i)(3)</u> for possession of a single bullet.

56.     Defendants falsely claimed the item had been recovered during the NYPD's May 6, 2022, search of Mr. Evans' home.

57.     <u>NYC Admin. Code § 10-131(i)(3)</u> is an unclassified misdemeanor carrying a sentence of not more than one year in jail and/or a fine of not more than $1,000. This sole charge qualified Mr. Evans for a mandatory Desk Appearance Ticket in lieu of custodial arrest pursuant to <u>New York State Criminal Procedure Law § 150.20</u> and related statutes. Mr. Evans had no bench warrants or prior convictions, had not failed to attend a court appearance within the prior two years, and did not otherwise qualify for an exception to the mandatory DAT requirement under the New York State law. Defendant NYPD Members, including Defendant Wallace and Defendant Martinez, prevented Mr. Evans from seeing or speaking with his attorney until approximately 12:30 AM on June 25, 2022.

58.     Maryanne K. Kaishian, Mr. Evans' attorney, was present at the precinct and requested to see and/or speak with Mr. Evans, who had likewise requested his attorney.

59.     After repeated demands to allow Ms. Kaishian to speak with Mr. Evans as his attorney, Defendant Martinez asked Mr. Evans if he knew, in sum and substance, "an angry Latina lawyer" who might be at the precinct to speak with him, which Mr. Evans denied. Ms. Kaishian is not Latin. Defendant Martinez then falsely informed Ms. Kaishian that Mr. Evans did not know her, and therefore would not be allowed to speak with her.

60.     Defendant NYPD Members, including Defendant Wallace and Defendant Martinez, prevented Mr. Evans from seeing or speaking with his attorney until approximately 12:30 AM on June 25, 2022. By this time, Mr. Evans had been in NYPD custody for approximately nine hours.

61.     Defendants continued to detain Mr. Evans until approximately 2:20 AM on June 25, 2022. At this time, he was released with a Desk Appearance Ticket bearing serial number 801-00039 and sworn by Defendant Kulug.

62.     The Kings County District Attorney's Office declined to prosecute Mr. Evans.

63.     Defendants' actions have caused Mr. Evans significant harm, suffering, trauma, pain, anxiety, fear, and other emotional and physical injuries, the full extent of which are not yet known.

64.     Defendants forced Mr. Evans to vacate his legal dwelling without due process and without authority to do so by installing a padlock on his apartment door, thereby interfering with the comfort, repose, peace and/or quiet of Mr. Evans in the use or occupancy of the dwelling unit and inducing him to vacate the property.

65.      Defendants further violated Mr. Evans' right to the use and comfort of his own dwelling by leveraging the promise of reentry during an illegal detention and interrogation.

**<u>Documented Conspiracy Against Plaintiff:</u>**

66.     The NYPD Defendants have targeted Mr. Evans for enforcement and used false information about him to advance an agenda in support of aggressive police tactics in the 61st Precinct and PSA 1 and have conspired to violate his civil rights.

67.     Between February and April 2022, a letter was mailed to individuals residing in the 61st Precinct, which is located within the PSA 1 catchment, as well as to elected officials and community leaders. *See* **Exhibit 1**, 61st Precinct Letter. The names and/or addresses of all recipients are currently unknown.

68.     Based on the content of the letter, and upon information and belief, the sources and/or authors of this letter appear to be members of the NYPD. The true identity or identities of the letter's author(s) and/or source(s) are currently unknown and are referred to herein as NYPD Defendant Does # 16-20.

69.     Defendants, including Defendant City, were aware of the letter's existence. The letter is the subject of an ongoing Internal Affairs Bureau investigation and was mailed to multiple City agents and/or employees and/or policymakers, including within the NYPD and Defendant Adams' Administration.

70.     At the time of this letter's release, and through the time of his June 2022 arrest, Mr. Evans was a participant of the community organization We Build the Block[1], a subsidiary of the 501(c)(3) NYC Together. Through this program, Mr. Evans participated in employment training, received educational services, and was a regular attendee of healing circles conducted for young people who have experienced trauma and loss.

---

[1] We Build the Block, About Us *available at* https://webuildtheblock.org/ (last visited July 14, 2023).

71.     The letter primarily targeted the Executive Director of We Build the Block, Dana Rachlin, with personal attacks related to Ms. Rachlin's status as a victim of gender-based violence and attempted to discredit her work providing alternatives to incarceration for youth.

72.     Likewise, the public letter accused NYPD Capt. Derby St. Fort, a public proponent of community-led safety initiatives[2] and a community partner with We Build the Block[3], of inappropriate loyalty to Mr. Evans.

73.     The letter, purportedly signed by "concerned members of the 61st Precinct," named Mr. Evans as a "gunman" and falsely alleged that he was present and in possession of a gun during an NYPD response to a club in 2021.

74.     Defendant Does #16-20 further claimed that Capt. St. Fort and/or Ms. Rachlin conspired with Mr. Evans to help him evade arrest.[4]

75.     These allegations are false.

76.     These allegations have damaged Mr. Evans' reputation and caused him to fear additional police retaliation.

77.     These allegations made plain that a conspiracy existed to violate Mr. Evans' rights and to target him for disparate enforcement as compared to similarly situated individuals.

---

[2] *See* Saki Knafo, *Bridging the Divide Between the Police and the Policed*, THE NEW YORKER, April 28, 2021, *available at* https://www.newyorker.com/news/our-local-correspondents/bridging-the-divide-between-the-police-and-the-policed ("Unfortunately, violence interrupters were not viewed as legitimate by many of my peers," St. Fort told [Saki Knafo], in an e-mail. "I decided to lean on the community, even though it felt like a risk to my professional career.")

[3] *Id.*

[4] The spurious claims recently resurfaced in a *New York Daily News* article targeting Capt. St. Fort published May 8, 2023. *See* Rocco Parascandola, *NYPD probes whether Brooklyn commander inappropriately helped teen gunman*, THE DAILY NEWS, May 8, 2023, available at https://www.nydailynews.com/new-york/nyc-crime/ny-nypd-brooklyn-precinct-commander-20230508-vfaq2wznfjckrav6mcobviqjeu-story.html. While the article did not name Mr. Evans, it identically mirrored the false allegations levied against him in the February 2022 letter. This article attributed its claims to internal police "sources" familiar with NYPD investigations. The true identity of these police sources, herein referred to as NYPD Defendant Does # 21-25, are currently unknown.

78.     Furthermore, between Mr. Evans' eviction by the NYPD on or about May 8, 2022, and his arrest on June 24, 2022, a representative from NYCHA contacted Defendant Rogers to inquire as to whether Defendant Rogers or any NYPD members had information regarding Mr. Evans' access to his home. Defendant Rogers falsely denied NYPD involvement in Mr. Evans' eviction, furthering the conspiracy against him and preventing Mr. Evans and/or advocates from addressing his housing status in NYCHA prior to the weaponization of the padlock key by Defendants during Mr. Evans' interrogation.

79.     Defendants, through their individual and collective conduct, have retaliated against and punished Mr. Evans for engaging in First Amendment protected activities, including his participation in and association with We Build the Block. Defendants have further retaliated against Mr. Evans for his association, whether perceived or in fact, with the individuals about whom Defendants interrogated Mr. Evans.

80.     In so doing, and through the additional conduct complained of herein, Defendants conspired to violate Mr. Evans' civil rights and have violated City, State, and Federal law and Mr. Evans' Constitutional rights.

## FIRST CLAIM FOR RELIEF

### Unlawful Seizure

*Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

81.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

82.     Defendants' seizure of the Plaintiff herein was done without any judicial warrant authorizing them to seize Plaintiff, was unreasonable, and was done without privilege or lawful justification.

83.     Plaintiff did not consent and was conscious of his confinement by Defendants.

84.     Defendants did not have individualized probable cause to seize, detain, or arrest Plaintiff.

85.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

86.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

***Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

87.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

88.     Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

89.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

90.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

**Violations of Plaintiff's Due Process Rights**

***Against All Defendants Pursuant to <u>42 U.S.C. § 1983</u> and the First, Fourth, Fifth, and Fourteenth Amendments***

91.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

92.     Defendant City, Defendant Adams, Defendant Sewell, and Defendant Rogers designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing Plaintiff and subjected Plaintiff to the violations of his Due Process rights described elsewhere herein.

93.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty and property without due process of law.

94.     Defendants' conduct—including evicting the teenaged Mr. Evans from his home, rendering him homeless for a month and a half, and dangling his house keys as bait during a hostile and impermissible custodial interrogation—is so appalling, harmful, and unconstitutional as to shock the conscience.

95.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

96.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## <u>FOURTH CLAIM FOR RELIEF</u>

**Municipal Liability**

***Against Defendant City, Defendant Adams, and Defendant Sewell Pursuant to <u>42 U.S.C. § 1983</u> and <u>Monell v. Department of Social Services</u>, <u>436 U.S. 658 (1978)</u> for Defendants'***

***Violations of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution***

97.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

98.     Policymakers Defendant Adams and Defendant Sewell were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

99.     The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to: placing individuals under custodial arrest when mandatory Desk Appearance Tickets are required in lieu of arrest and processing under CPL § 150.20(1)(a); conducting impermissible interrogations; illegally and unnecessarily extending a person's time in NYPD custody; refusing to grant individuals in custody access to counsel; and the continued employment and empowerment of NYPD members, including Defendant Wallace, who have been the subject of judicial "adverse credibility findings"[5] and/or have otherwise demonstrated a propensity for harm against the individuals exposed to them during the course of their employment.

100.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

    a.     Formal policies, rules, and procedures of Defendant City;

    b.     Actions and decisions by Defendant City's policymaking agents including, but not limited to, Defendant Adams and Defendant Sewell;

    c.     Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified,

---

[5] Defendant Wallace's testimony was not credited on a key factual issue in a Kings County case before Hon. Judge S. Hudson (Indict. No. 8854/2017), and his name appears on the Adverse Credibility Finding list published by New York City's District Attorneys.

sanctioned, and/or enforced by Defendant City, Defendant Adams, Defendant Sewell, and other policymaking officials;

d. Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

## FIFTH CLAIM FOR RELIEF

### False Arrest

***Against Defendant Adams, Defendant Sewell, and Defendant Rogers Pursuant to <u>42 U.S.C. 1983</u> and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

101. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

102. Defendants unlawfully restricted Plaintiff's movement and deprived Plaintiff of his liberty without a lawful warrant and without probable cause.

103. The facts available to the NYPD Defendants at the time of Plaintiff's arrest failed to support the charge against him. Nevertheless, Defendants unlawfully arrested and detained Plaintiff.

104. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

105. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

### Excessive Detention

*Pursuant to <u>42 U.S.C. 1983</u> and Plaintiff's Due Process Rights and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

106.    Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

107.    Plaintiff was held in custody for approximately eleven (11) hours by NYPD Defendants without justification or cause.

108.    This detention violated Plaintiff's right to be free from continued detention and was predicated upon false allegations by NYPD Defendants. Defendants' conduct was further prohibited by New York State law, including CPL § 150.20(1).

109.    Defendants' conduct in continuing to detain Plaintiff was motivated by Defendants' ill will and/or in an attempt to gather additional evidence to justify Plaintiff's arrest and/or delay for delay's sake.

110.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

111.    Accordingly, Plaintiff is entitled to the damages requested in this Complaint.

## SEVENTH CLAIM FOR RELIEF

### Malicious Prosecution

*Against All Defendants Pursuant to <u>42 U.S.C. 1983</u> and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

112.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

18

113.    Defendants instituted or caused the claim against Plaintiff to be instituted without any probable cause. Defendants provided false information to further the criminal prosecution of Plaintiff.

114.    Defendant Kulug executed the false complaint against Plaintiff charging him with a misdemeanor and signed his name to the document.

115.    Defendants' motive in instituting the prosecution was malicious, and the prosecution of Plaintiff was terminated in his favor.

116.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his liberty and his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

117.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

### Violations of New York State and/or New York City Law

### *Pursuant to the New York State Constitution and New York State Common Law*

118.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

### Respondeat Superior Liability

119.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

## Violations of the New York State Constitution

120.     Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

121.     A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

## Unlawful Search and/or Seizure

### Pursuant to the New York State Constitution and the New York City Administrative Code Chapter 8, Title 8, § 8-801, et seq.

122.     The NYPD Defendants are covered individuals as defined in NYC Admin. Code Ch. 8, Title 8, § 8-801.

123.     As described above, the Defendants violated Plaintiff's right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

124.     The NYPD Defendants and their employer, including the Defendant City, are liable to Plaintiff for this conduct.

125.     Under this provision, Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

## Statutory Construction — Declaratory Judgment

126.     The NYPD Defendants arrested Plaintiff and charged him with a low-level offense for which CPL § 150.20(1) mandates an appearance ticket rather than arrest.

127.     These Defendants detained Plaintiff from the time he was arrested until he was issued an appearance ticket and released.

128.    CPL § 150.20(1)(a) does not command or authorize the transport of individuals charged with a low-level offense to court or anywhere else, such as a precinct or jail. The only action CPL § 150.20(1)(a) authorizes for low-level offenses is to issue and serve an appearance ticket.

129.    None of the statutory exceptions under CPL § 150.20(1)(a) that relieve police of the requirement to issue an appearance ticket applied to Plaintiff.

130.    Not only were the allegations against Plaintiff false, but Defendant's warrantless arrest of Plaintiff on this single low-level charge was unlawful in any event.

131.    Plaintiff faces an ongoing threat of rearrest by the NYPD while conducting lawful activity, including during visits to family and friends in New York City in and around the site of his arrest.

132.    Plaintiff is therefore entitled to a declaration that CPL § 150.20 prohibits warrantless, custodial arrests by police for DAT-mandatory offenses absent an applicable statutory exception.

**Unreasonable Seizure**

133.    Article I, § 12 of the New York State Constitution protects the right to be free from "unreasonable searches and seizures." The illegal arrest practices described above constitute unreasonable seizures prohibited by the New York Constitution.

134.    By adopting and implementing the arrest practices in this manner, the City has enforced, promoted, encouraged and sanctioned a policy, practice and/or custom of arresting Plaintiffs for minor offenses, without probable cause to establish that a criminal offense for which an arrest is statutorily permitted has been or is being committed as required by the Constitution and laws of New York.

135. By sanctioning and enforcing policing practices in this manner, the Defendants and Defendant Municipality intentionally and under color of state law has seized, questioned, searched, arrested, transported, and detained Plaintiff without the requisite probable cause that a crime for which an arrest is statutorily permitted has been committed in violation of the Constitution and laws of the State of New York.

### False Arrest

136. The Officer Defendants unlawfully, unjustifiably, and intentionally arrested, transported, detained, deprived Plaintiff of his liberty against his will and imprisoned Plaintiff without a warrant.

137. The allegations against Plaintiff were false and were fabricated by Defendants.

138. Furthermore, at all times mentioned, the unlawful false arrest and imprisonment of the Plaintiff were without probable cause that Plaintiff committed an offense for which C.P.L. § 150.20 permits an arrest.

139. This arrest was forcible and against Plaintiff's will.

140. Because CPL § 150.20 required the NYPD Defendants to issue appearance tickets to Plaintiff instead of arresting him, the NYPD Defendants were without lawful authority to arrest Plaintiff.

141. All of the foregoing occurred without any fault on the part of Plaintiff.

142. At all relevant times, Plaintiff was aware of his confinement.

143. None of the statutory exceptions under CPL § 150.20(1)(a) that relieve an officer from the requirement of issuing an appearance ticket applied.

144. At all relevant times, the NYPD Defendants were employees and/or agents of Defendant City, and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

145.    Consequently, the Defendant City is liable under the doctrine of *respondeat superior* for the tortious actions of the NYPD Defendants.

146.    Accordingly, Plaintiff is entitled to damages as requested in this Complaint.

**Assault and Battery**

147.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

148.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

149.    Defendants did thereby inflict assault and battery upon the Plaintiff.

**False Imprisonment and Unreasonable Detention**

150.    By the actions described above, the police officials described herein did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff was conscious of the confinement, and it was without his consent.

**Intentional and Negligent Infliction of Emotional Distress**

151.    By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

152.    The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

153.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**Malicious Prosecution and Fabrication of Evidence**

154.    Defendants provided false information to initiate criminal proceedings against Plaintiff and undertook his arrest without probable cause.

155.    Defendants demonstrated actual malice against Plaintiff.

156.    The criminal prosecution against Plaintiff terminated in his favor when the Kings County District Attorney's Office conducted a review of the information supplied by Defendants and declined to prosecute the case against Plaintiff on or about July 12, 2022.

**Negligent Training, Retention, Hiring and Supervision**

157.    Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

158.    At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Mr. Evans' injuries.

159.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**Conversion**

160.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

161.    Defendants interfered with and/or eliminated his right to enjoy and/or access and/or use his tangible property.

162.    Defendants damaged the door to Mr. Evans' apartment and property contained within.

163.    Defendants illegally evicted Mr. Evans from his home and prevented him from accessing his residence or any of his personal property contained therein beginning on or about May 8, 2022.

164.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## NINTH CLAIM FOR RELIEF

### First Amendment Retaliation and First Amendment Restriction

### Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution

165.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

166.    Defendants imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in unlawfully seizing Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, in subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

167.    In addition to being retaliatory, the restrictions Plaintiff complains of herein, which Defendants imposed upon Plaintiff's First Amendment rights to participate in, observe, and/or stand nearby speech, conduct, association, and/or other expressive activities protected by the First Amendment on the streets, were themselves regulations on Plaintiff's protected conduct that:

a.    Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

b.    Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide

ample alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened; and/or

    c.    Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's abilities to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

    d.    Amounted to the imposition of strict liability on Plaintiff for engaging in protected speech and/or expression.

168.    Defendants further engaged in retaliation against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, including his association with We Build the Block and/or community-based programming and/or supporters of these programs, as well as Plaintiff's association with individuals about whom Defendants sought information during their extensive and unlawful interrogations of Plaintiff.

169.    Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

170.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

171.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

172.    Defendants' conduct did deter Plaintiff from free association and free speech, including by deterring him from reporting his illegal eviction to the same Department that had caused this harm.

173.    Additionally, as discussed above, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of his First Amendment rights.

174. Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

175. Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiff.

176. Upon information and belief, Defendants did not subject others similarly situated to Plaintiff in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

177. Plaintiff suffered actual chilling, including in that Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on his protected speech and/or conduct; and/or otherwise suffered some concrete harms.

178. Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiff subjected Plaintiff to the violations of their First Amendment rights described elsewhere herein.

179. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

180.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TENTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise

***Against Defendant City, Defendant Adams, Defendant Sewell and Defendant Rogers Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)***

181.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

182.    Defendant City, and its agents Defendant Adams, Defendant Sewell, and Defendant Rogers, failed to train and supervise the Defendant NYPD Members.

183.    All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Evans' injuries.

184.    Defendants knew or should have known that Defendant NYPD Members could violate the constitutional rights of individuals in their custody, and that this risk was substantial in the absence of adequate training or supervision.

185.    Defendants know that NYPD Members, particularly those assigned to Field Intelligence and NYPD PSAs, are certain to regularly encounter situations such as those described herein—including the police approach and/or arrest and/or interrogation of a young Black man—through the course of their employment.

186.    Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

187.    Defendants also knew that individual NYPD Defendants, including Defendant Wallace and Defendant Martinez, have a documented history of adverse credibility findings and/or

abusive conduct against individuals they encountered during their employment. At minimum, Defendant Martinez is the subject of multiple public complaints, and Defendant Wallace has been the subject of an adverse credibility finding while under oath.

188.    Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries. Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

189.    By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

190.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## ELEVENTH CLAIM FOR RELIEF

### Negligent Screening, Hiring, and Retention

*Against Defendant City, Defendant Adams, and Defendant Sewell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)*

191.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

192.    All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Evans' injuries.

193.    Defendant City and its agents Defendant Adams and Defendant Sewell knew that the individual Defendants had a propensity for the conduct giving rise to Mr. Evans' injuries.

194. Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

195. Such documented history of Defendants' willingness to lie and/or misrepresent facts while under oath and/or otherwise cause harm to individuals subjected to interactions with police renders Defendants' conduct both predictable to and preventable by policymaker Defendants.

196. Rather than removing or disciplining NYPD members who have provided non-credible testimony to courts or been the source of multiple civilian complaints and/or civil rights lawsuits, policymaker Defendants have continued to employ and empower such NYPD members to continue inflicting predictable harm on individuals they interact with, including Plaintiff. Such conduct is so foreseeable as to rise to the level of deliberate indifference.

197. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TWELFTH CLAIM FOR RELIEF

### Breach of Duty to Protect

*Against All Defendants Pursuant to 42 U.S.C. § 1983*

198. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

199. The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

200. Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

201.    Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

202.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

203.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRTEENTH CLAIM FOR RELIEF

**Conspiracy**

***Against All Defendants Pursuant to 42 U.S.C. § 1985(3)***

204.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

205.    Through the conduct described and complained of herein, Defendants conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

206.    Defendants acted in furtherance of this conspiracy against Plaintiff and, as a result of this conduct, Plaintiff was injured in his person and property and deprived of his constitutional and civil rights.

### FOURTEENTH CLAIM FOR RELIEF

**Failure to Prevent Civil Rights Violations**

***Against all Defendants Pursuant to 42 U.S.C. § 1986***

207.	Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

208.	Defendants, including Defendant City, Defendant Sewell, Defendant Rogers, and individual NYPD Defendants, had knowledge that the wrongs conspired to be done against Plaintiff in violation of 42 U.S.C. § 1985 were to be committed and had the power to prevent and/or aid in preventing the commission of this conduct.

209.	Defendants neglected and/or refused to prevent the commission of this conduct and Plaintiff sustained harm and/or the exacerbation of harm and the deprivation of his rights as a result of this failure.

210.	Defendants are liable for all damages caused by the conspiratorial conduct they failed to prevent despite possessing the power to do so.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York, jointly and severally as follows:

i.	Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.	Actual damages in an amount to be determined at trial against the City of New York;

iii.	Policy change;

iv.	Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York State Civil Rights Law, the New York City Administrative Code, and New York common law; and

v.	Such other relief as the Court deems just and proper.

Dated:    New York, New York
           July 24, 2023

**KAISHIAN & MORTAZAVI LLC**

By: _____
S. Masoud Mortazavi, Esq.
**KAISHIAN & MORTAZAVI LLC**
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: smm@kaishianlaw.com

## ATTORNEY VERIFICATION

I, S. MASOUD MORTAZAVI, an attorney duly admitted to practice before the Eastern District of New York, affirm the following to be true under the penalties of perjury:

1. I am the attorney of record for the Plaintiff.

2. I have read the annexed Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true. My beliefs, as to those matters therein not stated upon knowledge, are based upon facts, records, other pertinent information contained in my files.

I make this verification because Plaintiff does not reside in the County (Kings) where I maintain my office.

Dated: Brooklyn, New York
July 24, 2023

By: _____
S. Masoud Mortazavi, Esq.
**Kaishian & Mortazavi LLC**
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: smm@kaishianlaw.com